UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **HILDA MARTIN,** | § |
| *Plaintiff* | § |
| v. | § CIVIL NO. A-19-CV-00470-LY |
| **CRESTLINE HOTELS & RESORTS, LLC D/B/A SPRINGHILL SUITES AUSTIN ROUND ROCK,** | § |
| *Defendant* | § |

# O R D E R

Before the Court are Liberty Mutual Fire Insurance Company's ("Liberty") Motion to Quash Plaintiff's Subpoena and for Protective Order, filed May 13, 2020 (Dkt. 28); Plaintiff's Response, filed May 19, 2020 (Dkt. 30); and Liberty's Reply, filed May 26, 2020 (Dkt. 32). On May 28, 2020, the District Court referred the motion and related filings to the undersigned Magistrate Judge for resolution, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. The Court conducted a telephonic hearing on the motion on June 8, 2020.

## I.     General Background

On March 11, 2019, Hilda Martin ("Plaintiff"), a resident of Aransas Pass, Texas, filed this negligence lawsuit in the United States District Court for the Southern District of Texas[1] against Crestline Hotels & Resort, LLC d/b/a Springhill Suites Austin-Round Rock ("Defendant"). Plaintiff alleges that she contracted Legionnaire's disease while she was a guest at the Springhill Suites located at 2960 Hoppe Trail, Round Rock, Texas 78681 ("Hotel"). Plaintiff alleges that she

---

[1] On May 1, 2019, the Southern District of Texas transferred the case to the Austin Division of the Western District of Texas.

contracted the disease after she used the Hotel's indoor pool on September 9, 2017, due to Defendant's negligence. Among other allegations, Plaintiff contends that Defendant was negligent in failing to follow proper procedures for the inspection of pool/jacuzzi water and in discovering and reacting to the presence of legionella bacteria, which can cause Legionnaires' disease, in the pool/jacuzzi water. Plaintiff claims that she suffered serious injuries from the exposure to legionella and was hospitalized for several weeks. Plaintiff further contends that five other guests or visitors also contracted Legionnaire's disease at the Hotel but settled their claims without initiating litigation.

Defendant's Answer raises an affirmative defense that "the damages suffered by Plaintiff were caused solely by the independent actions of third parties which were not under the control of Defendant Crestline." Dkt. 6 ¶ 17. According to Plaintiff, Defendant is relying on a theory "that Plaintiff's strain of legionella is different from the strain that affected the other guests or visitors of the hotel during the relevant time." Dkt. 30 at 2. During the hearing, counsel for Defendant argued that Plaintiff's strain of legionella is different from the strain found at the Hotel, but Defendant does not know what strain affected the five others who had Legionnaire's disease.

Plaintiff served Liberty, Defendant's liability insurance carrier, with discovery requests seeking the insurance claim files of the five other individuals who allegedly contracted the disease from the Hotel pool. The Deposition on Written Questions and Subpoena Duces Tecum ("Subpoena") served on Liberty seeks the production of the following documents:

> Any and all records of or concerning all claims threatened, made litigated, settled or otherwise brought to your attention, involving an allegation of legionella bacteria exposure, legionellosis, "Legionnaire's Disease" or any other similar injury or illness alleged to have occurred at or resulted from exposure to a water or other source at the SpringHill Suites by Marriott Austin Round Rock . . . from January 1, 2017 through December 31, 2017 . . . .

Dkt. 21-1 at 6. Plaintiff alleges that she attempted to obtain this information from Defendant, but Defendant contends that the requested documents are not in its possession, custody, or control. Plaintiff alleges that if her strain of legionella is the same as the strain that infected others at the Hotel, this fact would clearly support her case.

Liberty filed this Motion to Quash and Protective Order, arguing that the Subpoena "seeks documents that are irrelevant and protected, privileged medical information of third parties, as well as information protected by the attorney-client and work-product privileges." Dkt. 28 at 3.

## II.  Standard of Review

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Generally, the scope of discovery is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004)). Information within the scope of discovery need not be admissible in evidence to be discoverable. FED. R. CIV. P. 26(b)(1). "The Court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003).

## III.  Analysis

Liberty argues that the Subpoena should be quashed because it seeks (1) the disclosure of confidential, private, medical information, (2) information protected by the attorney-client and work-product privileges, and (3) irrelevant information.

Liberty first argues that Plaintiff's Subpoena should be quashed under Federal Rule of Civil Procedure 45(3)(A)(iii) because it seeks confidential, private, medical information protected from discovery under Texas law. Because this case is before the Court on diversity jurisdiction, Texas state law evidentiary privileges and confidentiality apply. FED. R. EVID. 501; *In re Avantel, SA*, 343 F.3d 311, 318 n.6 (5th Cir. 2003).

Under Texas law, confidential communications between a physician and patient are generally privileged and may not be disclosed. *In re Collins*, 286 S.W.3d 911, 916 (Tex. 2009). The physician-patient privilege is intended to facilitate full communication between patients and their physicians and to prevent disclosure of personal information to third parties. *See R.K. v. Ramirez*, 887 S.W.2d 836, 840 (Tex. 1994). Section 159.002 of the Texas Occupations Code and Rule 509(c)(2) of the Texas Rules of Evidence specifically provide that records of the identity, diagnosis, evaluation, or treatment of a patient are confidential and privileged and may not be disclosed. Section 159.002(b) provides, in relevant part, the following:

> (a) A communication between a physician and a patient, relative to or in connection with any professional services as a physician to the patient, is confidential and privileged and may not be disclosed except as provided by this chapter.
>
> (b) A record of the identity, diagnosis, evaluation, or treatment of a patient by a physician that is created or maintained by a physician is confidential and privileged and may not be disclosed except as provided by this chapter.
>
> (c) A person who receives information from a confidential communication or record as described by this chapter, other than a person listed in Section 159.004 who is acting on the patient's behalf, may not disclose the information except to the extent that disclosure is consistent with the authorized purposes for which the information was first obtained.

TEX. OCC. CODE ANN. § 159.002(b) (West 2015).

This privilege is limited by certain exceptions, including a "litigation exception," which applies when "any party relies on the patient's physical, mental, or emotional condition as part of the

4

party's claim or defense and the communication or record is relevant to that condition." TEX. R. EVID. 509(e)(4), 510(d)(5); *see also* TEX. OCC. CODE ANN. § 159.003(a)(4) (listing exception "in a civil action or administrative proceeding, if relevant, brought by the patient or a person on the patient's behalf, if the patient or person is attempting to recover monetary damages for a physical or mental condition including the patient's death").

Here, Plaintiff is unable to rely on the litigation exception to the patient-physician privilege because she is seeking not her own medical information, but the medical information of non-parties who have not waived their patient-physician privileges in *this* case. *See In re Columbia Valley Reg'l Med. Ctr.*, 41 S.W.3d 797, 799 (Tex. App. 2001, no pet.) (holding that medical records of non-party patients were privileged under § 159.002(b) and no exception applied). "The physician-patient privilege belongs to the patient." *In re Christus Health Se. Texas*, 167 S.W.3d 596, 600-01 (Tex. App. 2005, no pet.). Because the non-party patients are not parties to this litigation and have not waived their patient-privilege, their medical records are protected under Texas law. As one Texas court noted, "merely because a person . . . has filed a claim with an insurance company does not necessarily mean the person . . . has consented to making his medical records public." *In re Dolezal*, 970 S.W.2d 650, 652–53 (Tex. App.—Corpus Christi 1998, no pet.) (holding that trial court abused its discretion in ordering chiropractor to disclose the identity of all patients that had any type of connection to the plaintiff's attorneys and to produce all billing records for services rendered to attorneys or patients). Thus, if Liberty were required to provide the information requested in the Subpoena, the privacy rights of non-party patients would be violated. *See id.* Liberty cannot waive the privilege on behalf of the non-party patients because the privilege belongs to the patient. *See* TEX. OCC. CODE ANN. § 159.002(c).

Plaintiff argues that these confidential records can be "produced under the Protection of the Court, such that Plaintiff would be precluded from disseminating these materials to anyone outside the case and this protection would extend to Plaintiff's experts."[2] Dkt. 30 at 7. Texas courts, however, have specifically held that "a confidentiality order does not overcome a claim of privilege." *In re Xeller*, 6 S.W.3d 618, 626 (Tex. App. 1999, no pet.); *see also Ex parte Lowe*, 887 S.W.2d 1, 4 (Tex. 1994) (holding that while a confidentiality order may be necessary to provide the least obtrusive means to grant disclosure rights while deferring to First Amendment concerns, "[i]t does not itself justify disclosure").

Courts also have found that redaction of identifying information from nonparty medical records does not defeat the medical records/patient-physician privilege. *See In re Tenet Healthcare, Ltd.*, No. 12-05-00310-CV, 2006 WL 860076, at *2 (Tex. App. Mar. 31, 2006, no pet.) (holding that the redaction of identifying information from nonparty medical records does not defeat the medical records privilege and thus the records were "privileged in their entirety"); *Columbia Valley*, 41 S.W.3d at 799 (rejecting argument that redaction would overcome privilege and noting that "[a]llowing production of information regarding diagnosis, evaluation or treatment, would expand the scope of discovery of nonparty medical records, running afoul of the plain language of the privilege statutes").

Based on the foregoing, the Court finds that the Subpoena encompasses documents that are privileged and not discoverable.[3] Accordingly, Liberty's Motion to Quash Plaintiff's Subpoena and for Protective Order (Dkt. 28) is **GRANTED**.

---

[2] In support of this argument, Plaintiff relies on *Booth v. City of Dallas*, 312 F.R.D. 427, 434 (N.D. Tex. 2015). *Booth*, however, involved the disclosure of the plaintiff's own medical records, not the disclosure of medical records of non-parties. Accordingly, Plaintiff's reliance on *Booth* is misplaced. Plaintiff cites no other caselaw to support her argument.

[3] Because the Court finds that the documents requested in the Subpoena are protected confidential patient-physician medical information under Texas law, the Court need not address Liberty's alternative arguments.

**IT IS FURTHER ORDERED** that that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Lee Yeakel.

**SIGNED** on June 11, 2020.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE